**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

MAXINE GAIL VEATCH and CHRIS
PRICE, Individually and as the Next
Friend of Agnes Bell,

    Plaintiffs,

vs.

BARTELS LUTHERAN HOME a/k/a
BARTELS LUTHERAN RETIREMENT
COMMUNITY, DEBRA K.
SCHROEDER, BRIANNA BRUNNER,
CITY OF WAVERLY and JASON
LEONARD,

    Defendants.

No. 08-CV-2044-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *A.*     *Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *B.*     *Parties Dispute Bell's Care* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *C.*     *Alleged Adult Abuse Incident* . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *D.*     *Report and Investigation of Alleged Abuse* . . . . . . . . . . . . . . . . *6*
        *E.*     *Assault Prosecution of Veatch* . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *F.*     *DHS Investigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *A.*     *Waverly Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
            *1.*     *§ 1983 claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

|  |  | a. | *Leonard* | 9 |
|  |  | b. | *City* | 10 |
|  | 2. | *State law claims* | | 14 |
| B. | *Bartels Motion* | | | 15 |
| VII. | **CONCLUSION** | | | 15 |

## I. INTRODUCTION

The matters before the court are the "Motion for Summary Judgment" ("Bartels Motion") (docket no. 12) filed by Defendants Bartels Lutheran Home, Debra K. Schroeder and Brianna Brunner (together, "Bartels Defendants") and the "Motion for Summary Judgment" ("Waverly Motion") (docket no. 14) filed by Defendants City of Waverly ("City") and Jason Leonard ("Leonard").[1]

## II. RELEVANT PROCEDURAL BACKGROUND

On June 9, 2008, Plaintiffs Maxine Veatch and Chris Price, individually and as the next friend of Agnes Bell (together, "Plaintiffs"), filed a twelve-count Complaint (docket no. 2) against the Bartels Defendants, the City and Leonard. Plaintiffs allege the following claims against the Bartels Defendants: (1) "abuse of process—criminal assault;" (2) "abuse of process—dependent adult abuse allegation;" (3) "malicious prosecution—criminal assault;" (4) "malicious prosecution—dependent adult abuse;" (5) defamation; (6) conspiracy; (7) intentional infliction of emotional distress; (8) breach of contract; and (9) invasion of privacy. Plaintiffs allege the following claims against the City and Leonard: (1) a claim under 42 U.S.C. § 1983 for a violation of their rights under the United States Constitution and the Iowa Constitution; (2) false imprisonment; (3) negligence; and (4) "malicious prosecution—criminal assault." On August 7, 2008, the City and Leonard filed an Answer (docket no. 6). On August 14, 2008, the Bartels Defendants filed an Answer (docket no. 7). On April 24, 2009, Plaintiffs filed a "Stipulation of Dismissal"

---

[1] The court collectively refers to the Bartels Motion and Waverly Motion as the "Motions."

2

("Stipulation") (docket no. 11), which dismissed Agnes Bell from the instant action.[2]

On May 29, 2009, the Bartels Defendants filed the Bartels Motion. On June 4, 2009, the City and Leonard filed the Waverly Motion. On June 22, 2009, Plaintiffs filed a Resistance (docket no. 15) to the Bartels Motion. On June 29, 2009, the Bartels Defendants filed a Reply (docket no. 16). That same date, Plaintiffs filed a Resistance (docket no. 17) to the Waverly Motion. On July 7, 2009, the City and Leonard filed a Reply (docket no. 18).

The parties requested oral argument on the Motions. The court finds that oral argument is unnecessary. The Motions are fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court holds that it has federal question jurisdiction over Plaintiffs' § 1983 claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The court has discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]").

### IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the

---

[2] The impact of the Stipulation is not clear. Agnes Bell was never a party in the instant action and could not be dismissed as a party. From the context of the Motions, however, the court understands that the Stipulation rendered the claims for invasion of privacy and breach of contract moot, because they were brought on behalf of Agnes Bell.

nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006)

4

(quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the facts in the light most favorable to the non-moving party, the undisputed facts are as follows:

### A. *Players*

Plaintiff Maxine Veatch ("Veatch") is a resident of Cedar Falls, Iowa. Plaintiff Chris Price ("Price") is a resident of Mason City, Iowa. Veatch and Price are sisters. Plaintiffs' mother, Agnes Bell ("Bell"), is about 94 years old and lives at Woodland Terrace, a skilled care residential facility in Waverly, Iowa.

Defendant Bartels Lutheran Home, also known as Bartels Retirement Community ("Bartels"), is an Iowa corporation and operates Woodland Terrace. Defendant Debra Schroeder ("Schroeder") is the President and Chief Executive Officer of Bartels. Defendant Brianna Brunner ("Brunner") was the Director of Nursing for Bartels at all times relevant to the instant action.

The City is a municipal corporation located in Bremer County, Iowa. It operates a police force. Leonard is an officer of the Waverly Police Department. Leonard held the rank of Detective Sergeant at all times relevant to the instant action.

### B. *Parties Dispute Bell's Care*

In 2004, Bell moved into Woodland Terrace. Plaintiffs visited Bell weekly and also took her on trips outside of Bartels. During 2006, Plaintiffs observed what they considered quality of care problems at Bartels. They raised these issues with Bartels staff. The staff held several meetings with Plaintiffs to address these concerns. On May 15, 2006, Plaintiffs, Bartels staff, and Tonya Amos, a representative from the State Ombudsman's office, met to develop a plan to address Plaintiffs' concerns.

During this period, Bartels staff became concerned that Plaintiffs were overly aggressive in participating in their mother's care. Bartels staff was also concerned that

Plaintiffs were possibly requiring Bell to do things against her wishes.[3] According to the Bartels staff, Bell raised these concerns with them but reneged on her complaints after Plaintiffs spoke to her. Several staff members also feared Veatch after she confronted them about several issues, including wrinkly clothing and how much Bell walked each day. During the spring and summer of 2006, Bartels staff began keeping written records of incidents involving Bell's care and any arguments or confrontations between Plaintiffs and Bartels staff.

### C. *Alleged Adult Abuse Incident*

On September 27, 2006, Plaintiffs visited Bell. They took her to a doctor's appointment in Cedar Falls, Iowa and went shopping before returning to Bartels for dinner. While Bell and Plaintiffs walked to the dining room, a Bartels nurse, Jan Whiteside, believed she saw Veatch shove Bell into her wheelchair. Whiteside also believed that she saw Price quickly wheel her mother into her mother's room. Whiteside called her supervisor, Jenny Kane, to report what she had observed. Kane instructed Whiteside to call the Iowa Department of Inspections and Appeals ("IDIA") to report the incident as a possible case of dependent adult abuse. Whiteside called IDIA later that evening. Whiteside then prepared a written report of what she had seen and placed it under Brunner's door. Kane also called Brunner that evening to discuss the incident.

### D. *Report and Investigation of Alleged Abuse*

On September 28, 2006, Brunner read Whiteside's report. Brunner notified Schroeder of the incident. Brunner contacted the State Ombudsman's office for advice on how to proceed and was advised to contact the local police.

Brunner directed two Bartels nurses to conduct a full body inspection of Bell for any

---

[3] Among other things, Bartels staff were concerned that Plaintiffs required Bell to drink juice when she did not want it, walk when she preferred to use a wheel chair and stay awake when she was tired and wanted to go to bed.

injuries.  It was Bartels's policy to conduct such inspections following any fall or other similar incident.  The inspection revealed bruising on Bell's knee and forearms.  The nurses reported this bruising to Brunner.

Bartels staff reported the incident to the Iowa Department of Human Services ("DHS") and the Waverly Police Department ("WPD").  Brunner contacted the WPD and spoke with Officer Thomas Luebbers.  Brunner informed Officer Luebbers of the incident and the bruising observed on Bell's forearms and knee.  Officer Luebbers prepared a report and sent an investigator to Bartels.

That afternoon, pursuant to Luebbers's report, Leonard met with Schroeder, Brunner and two other staff members at Bartels to discuss the incident.  This meeting lasted approximately one to two hours.  Bartels staff informed Leonard of the bruising they had observed on Bell's body.  Leonard did not personally interview Bell or Whiteside.

Sometime on September 29, 2006, Dr. Lee Fagre, a Bartels medical director, examined Bell.  Dr. Fagre identified bruising on her buttocks and forearms and concluded the bruising could have resulted from being shoved into a wheelchair.  At some point, a Bartels staff member informed Leonard of Dr. Fagre's conclusions.  The parties dispute when this occurred.

On September 29, 2006, Leonard called Veatch and asked her to come to the Waverly Law Center to discuss abuse allegations regarding Bell.  At about 1:00 p.m., Veatch met with Leonard at the Waverly Law Center.  Leonard informed Veatch that she had been accused of abusing her mother.  Veatch told Leonard she would like to have an attorney present during the rest of the interview.  Leonard then left the room for a short period.  When he returned, he placed Veatch under arrest for simple misdemeanor assault under Iowa Code Sections 708.1 and 708.2(6).  Leonard then escorted Veatch down the hall and placed her in the custody of Bremer County jail officials.  Veatch remained in jail overnight.

On September 30, 2006, Veatch appeared before a magistrate. The magistrate determined Leonard had probable cause to believe Veatch committed the assault. The magistrate released Veatch on her own recognizance at about 1:00 p.m.. Veatch's release was subject to a no contact order regarding Bell.

### E. Assault Prosecution of Veatch

On October 6, 2006, Veatch entered a plea of not guilty to the assault charge. In August of 2007, a jury trial was held in the Iowa District Court for Bremer County, no. 02091-SMMG007022. At the close of the government's case, Veatch moved for a directed verdict. The Iowa District Court denied the motion and found a jury question had been generated. On August 3, 2007, the jury returned a verdict of not guilty on all counts.

### F. DHS Investigation

DHS also opened an investigation to determine whether dependent adult abuse had occurred. On January 18, 2007, DHS issued a report indicating the allegation of dependent adult abuse was founded. On October 16, 2007, however, an Administrative Law Judge reversed the DHS finding and held that the allegations of dependent adult abuse were unfounded.

## VI. ANALYSIS

Plaintiffs allege a claim under 42 U.S.C. § 1983 as well as a number of state law claims. Defendants argue that all claims should be dismissed.

### A. Waverly Motion

In the Waverly Motion, the City and Leonard ask the court to dismiss all claims against them. Plaintiffs resist.

#### 1. § 1983 claim

Veatch alleges that Leonard and the City are liable under 42 U.S.C. § 1983 for violations of Veatch's constitutional rights. Specifically, Veatch alleges that her warrantless arrest violated her rights under the Fourth Amendment of the United States

8

Constitution and Article I, § 8 of the Iowa Constitution. Veatch also argues that Leonard violated her Fifth and Sixth Amendment rights under the United State Constitution by arresting and incarcerating her and "delay[ing] prompt access to a Magistrate in retaliation for [Veatch's] asserting her right to counsel and the right to remain silent." Complaint at ¶ 40.

Veatch contends that the City is liable for Leonard's allegedly unconstitutional conduct. Veatch argues that the City failed to properly "train and supervise [Leonard] in the statutory and constitutional protections for those accused and investigated for a criminal violation." *Id.*

### a. Leonard

Leonard asks the court to grant the Waverly Motion and dismiss Plaintiffs' § 1983 claim against him because Plaintiffs sued him solely in his official, rather than individual, capacity. "Because section 1983 liability exposes public servants to civil liability and damages . . . [,] only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619-20 (8th Cir. 1995)). "If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754-55 (8th Cir. 1997)). "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535.

Plaintiffs "acknowledge[] that the Complaint does not expressly state that Officer Leonard is being sued in his individual capacity." Pl. Brief (docket no. 15-4), at 4. Plaintiffs represent in their brief that they intended to "submit[] a Motion to Amend the Complaint to include this express language . . . ." *Id.* However, Plaintiffs have failed to

9

amend the Complaint or seek leave to do so. The Complaint continues to lack any "express statement" that Plaintiffs are suing Leonard in his individual capacity. *Johnson*, 172 F.3d at 535. Without such statement, the court presumes Plaintiffs sue Leonard only in his official capacity. *Artis*, 161 F.3d at 1182. As such, the claim against Leonard is redundant to the claim against the City itself. *See id.* (affirming dismissal of § 1983 claim against public official because plaintiff's failure to expressly sue official in his individual capacity made the claim "redundant to the claim against the [government agency]").

Plaintiffs argue that Leonard clearly knew he was being sued in his individual capacity because he asserted qualified immunity as a defense in his Answer. Plaintiffs contend that, because this defense is "only available to a public official being sued in [his] individual capacity, [Leonard] correctly assumed that the Complaint did allege individual capacity liability." Pl. Brief at 4. This argument is unconvincing. The Eighth Circuit Court of Appeals has consistently required a clear, unequivocal statement that a public official is sued in his individual capacity. *See Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (citing *Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n. 3 (8th Cir. 1984)). The court will not attempt to discern such a statement by looking to Leonard's affirmative defenses; Plaintiffs cannot overcome their pleading deficiencies by relying on the opposing party's affirmative defenses. Such a standard would be entirely at odds with the clear statement requirement. *See Baker*, 501 F.3d at 924 (rejecting plaintiff's argument that complaint adequately named defendants in individual capacities by praying for "exemplary damages" that may not be recovered in an official capacity suit). Accordingly, the court shall grant the Waverly Motion to the extent that it asks the court to dismiss the § 1983 claim against Leonard.

### b. City

The City asks the court to grant the Waverly Motion and dismiss Plaintiffs' § 1983 claim against it. The City argues that it cannot be held liable as a municipality because

Leonard committed no constitutional violation. Alternatively, the City argues that the prerequisites for municipal liability for a failure to train are not met.

"Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Walker v. Bonenberger*, 438 F.3d 884, 890 (8th Cir. 2006)). Thus, in order for the City to be liable, Veatch must establish that Leonard violated her constitutional rights.

Veatch argues that Leonard violated her Fourth Amendment rights by arresting her for a simple misdemeanor assault without a warrant and without probable cause. Veatch also argues that Leonard arrested her in retaliation for asserting her right to counsel and her right to remain silent. Veatch contends that this violated her Fifth and Sixth Amendment rights under the United States Constitution. The court will address these alleged constitutional violations, in turn.

First, the court finds that Leonard did not violate the Fourth Amendment by arresting Veatch for a simple misdemeanor without a warrant. "'The Supreme Court has never held that a police officer violates the Fourth Amendment merely by arresting someone without a warrant for a misdemeanor offense which did not occur in the officer's presence and/or did not involve a breach of the peace." *Benigni v. Smith*, 121 F. App'x 164, 165 (8th Cir. 2005) (per curiam) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 992 (7th Cir. 2000)). Veatch's argument that a warrantless arrest for a simple misdemeanor violates Iowa law is irrelevant to her § 1983 claim. *See, e.g.*, *Benigni*, 121 F. App'x at 165 ("In a § 1983 case, the issue is whether the officer should have known that the arrest violated clearly established rights under the Fourth Amendment, not whether the officer violated state law."); *Whisman v. Rinehart*, 119 F.3d 1303, 1312 (8th Cir. 1997) ("Alleged violations of state laws, state agency regulations, and even state court

11

orders do not by themselves state a claim under 42 U.S.C. § 1983. Only federal rights are guarded and vindicated by such statute."). Leonard's arrest of Veatch for a misdemeanor was not unconstitutional simply because Leonard had not obtained a warrant.

For § 1983 purposes, an arrest for a misdemeanor does not require a warrant provided the arresting officer has probable cause. *See, e.g.*, *Perkel v. City of Springfield*, 10 F. App'x. 390, 391 (8th Cir. 2001) (per curiam) (affirming dismissal of § 1983 claim where "[t]he warrantless arrest outside of plaintiff's home was lawful, because the arresting officers had probable cause"); *Greiner v. City of Champlin*, 27 F.3d 1346, 1353 (8th Cir. 1994) (concluding that, when a warrantless arrest for a misdemeanor occurs outside arrestee's house, police need only probable cause to arrest).

The parties correctly note that the issue of probable cause is the "determinative factor" to resolve the § 1983 claim. Pl. Brief at 5. "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007). In assessing probable cause determinations, courts consider "'the totality of the circumstances as set forth in the information available to the officers at the time of arrest.'" *United States v. Quiroga*, 554 F.3d 1150, 1154 (8th Cir. 2009) (citing *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Applying these standards to Veatch's arrest, the court finds that Leonard had probable cause to arrest her. When Brunner arrived at Bartels on September 28, 2006, she read the statement that Whiteside had prepared shortly after witnessing the alleged assault. Brunner concluded that Whiteside's report was consistent with what Kane had told her over the telephone. Kane and another Bartels nurse also inspected Bell and took photographs

12

of her, which revealed bruising on her knee and forearms. Brunner then called the WPD and provided this information to Officer Luebbers. Based on this information, Luebbers prepared an incident report and contacted Leonard.

That afternoon, Leonard went to Bartels and spoke with several staff members, including Brunner, about the incident. Leonard was at Bartels for one to two hours discussing the matter. Brunner and Kane also informed Leonard of the bruises on Bell's body. All of this information came from Bartels staff and administrators familiar with Bell and her daughters. The court finds that this information was sufficient to establish probable cause for Veatch's arrest because "the facts and circumstances [were] sufficient to lead a reasonable person to believe that [Veatch] ha[d] committed" the assault. *Torres-Lona*, 491 F.3d at 755.

The court disagrees that Leonard was required to speak directly with a firsthand witness or interview Bell herself in order to establish probable cause. Plaintiffs cite no authority in support of this argument. The court also finds that the fact that Leonard may not have received Dr. Fagre's report until after the arrest is immaterial. Bartels staff told Leonard that Bell was uncomfortable speaking with unfamiliar people and therefore would be unlikely to make a statement. Leonard's information came directly from Brunner, who had reviewed Whiteside's report and confirmed that it was consistent with the information Kane had related to her. The bruising on Bell's body also corroborated what Bartels administrators told Leonard. Because Leonard had probable cause to arrest Veatch, he did not violate Veatch's Fourth Amendment rights. Absent a constitutional violation by its officer, the City cannot be subject to liability for failure to train. *Sanders*, 474 F.3d at 527.

To the extent Veatch alleges that Leonard violated her Fifth and Sixth Amendment rights by arresting her in retaliation for asserting those rights, the court concludes that claim is without merit. Veatch asserted these allegations in the Complaint, but does not

13

address them in her brief, her responses to the City's statement of material facts or in her own statement of additional material facts. Even if the court assumes that such actions would amount to a constitutional violation, Veatch points to no evidence to support this claim. Thus, Veatch has failed to meet her burden to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 915 (8th Cir. 2007) (holding that district court need not speculate on which part of record nonmoving party relies, nor is it obligated to "wade through and search the entire record for some specific facts that might support nonmoving party's claim"). Leonard stated that the only result of Veatch's assertion of her Constitutional rights was that it prevented him from obtaining her version of the alleged assault. Leonard also stated that, even if Veatch had agreed to be interviewed, it was likely that he would have arrested her based on his investigation alone. Veatch failed to rebut this evidence. Accordingly, the court shall grant the Waverly Motion to the extent that it asks the court to dismiss Plaintiffs' § 1983 claim against the City.

### 2. *State law claims*

Plaintiffs' remaining claims against the City and Leonard are state law claims over which the court may choose to exercise jurisdiction. The court may exercise supplemental jurisdiction over claims for which it does not have original jurisdiction "that are so related to the claim in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Supreme Court has noted that, 'in the usual case in which all federal[] law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state[] law claims.'" *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting *Carnegie-Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the court declines to exercise jurisdiction over Plaintiffs' state law claims against the City and Leonard. Therefore, the court need not address the remainder of the Waverly Motion.

### B. Bartels Motion

Plaintiffs assert only state law claims against the Bartels Defendants. In light of the court's dismissal of Plaintiffs' federal claim, the court declines to exercise supplemental jurisdiction over the state law claims against the Bartels Defendants. In doing so, the court shall dismiss the last of the claims in the Complaint, and it shall dismiss the Complaint in its entirety. Accordingly, the court need not address the Bartels Motion.

### VII. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED**:

(1) The Waverly Motion (docket no. 14) is **GRANTED IN PART**;

(2) The Bartels Motion (docket no. 12) is **DENIED AS MOOT**;

(3) Plaintiffs' § 1983 claims are **DISMISSED WITH PREJUDICE**;

(4) The remaining claims in the Complaint (docket no. 2) are **DISMISSED WITHOUT PREJUDICE**;

(5) The pending Motions in Limine (docket nos. 19 and 21) are **DENIED AS MOOT**;

(6) The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants City of Waverly and Jason Leonard and to **CLOSE THIS CASE**.

**DATED** this 9th day of October, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA